UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALESA Y. LOTT,<br><br>    Plaintiff,<br><br>  v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>    Defendant. | No. CV 05-00114-JTL<br><br>MEMORANDUM OPINION AND ORDER |

**PROCEEDINGS**

On January 6, 2005, Alesa Y. Lott ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of her application for disability insurance benefits. On February 14, 2005, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on July 14, 2005, defendant filed an Answer to Complaint. On September 20, 2005, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

**BACKGROUND**

On December 17, 2001, plaintiff filed an application for disability insurance benefits. (Administrative Record ["AR"] at 56-59). Plaintiff alleged that beginning on December 13, 1999, she was unable to work because she suffered from the following impairments: asthma, multiple joint arthritis, depression, congestive heart failure, bypass surgery, and hypertensive cardiovascular disease/hypertension. (AR at 56, 84). The Commissioner denied plaintiff's application for benefits, initially and upon review. (AR at 31-36, 38-42).

Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 43). On February 26, 2004, the ALJ conducted a hearing in Los Angeles, California. (AR at 482-537). Plaintiff appeared at the hearing with counsel and testified. (AR at 484-512). Arvin Klein, M.D., a medical expert, appeared and testified. (AR at 512-24). Gloria Lassoff, a vocational expert, also appeared and testified. (AR at 524-34).

On July 26, 2004, the ALJ issued his decision denying benefits. (AR at 17-27). In his decision, the ALJ concluded that plaintiff suffered from the following severe impairments within the meaning of the Social Security Regulations: obesity, history of coronary artery disease, status post coronary artery bypass graft (times three) with recurrent chest pain (atypical for angina), hypertension, asthma, and major depressive disorder with anxiety features. (AR at 22). According to the ALJ, however, these impairments did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (Id.). The ALJ concluded that plaintiff retained the residual functional

capacity to perform work at a light exertional level, with standing and walking limited to two hours total in an eight-hour workday. (AR at 22). The ALJ also assessed the following nonexertional limitations: never climbing ladders, ropes, or scaffolds; occasional climbing ramps and stairs; avoid concentrated exposure to temperature extremes and pulmonary irritants. (Id.). The ALJ also assessed the following restrictions: slight impairment of ability to comprehend and follow instructions; very slight impairment in ability to perform simple and repetitive tasks; slight to slight to moderate impairment in ability to maintain a work pace appropriate to a given work load; slight to moderate impairment in ability to perform complex or varied tasks; slight to moderate impairment in ability to relate to others; slight to moderate impairment in the ability to influence others; slight to slight to moderate impairment in the ability to make generalizations; and slight to slight to moderate ability to accept and carry out responsibility for direction, control, and planning. (AR at 22-23). In accordance with these limitations, the ALJ determined that plaintiff could perform her past relevant work as a telemarketer. (AR at 25). Ultimately, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act. (Id.).

On or about August 6, 2004, plaintiff filed a request with the Appeals Council for a review of the ALJ's decision. (AR at 12-13). The Appeals Council subsequently affirmed the ALJ's decision. (AR at 5-7).

**PLAINTIFF'S CONTENTION**

Plaintiff claims that the ALJ's mental residual functional capacity finding was improper.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

**DISCUSSION**

**A.   The Sequential Evaluation**

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (1991); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). At step one, disability benefits are denied if the Commissioner determines that the claimant is engaged in substantial gainful activity. Id. at 140. At step two, the Commissioner evaluates whether the claimant has a medically severe impairment which significantly limits his physical or mental ability to do basic work activities. Id. at 140-41. Step three requires a consideration of

4

whether the claimant's impairment is equivalent to one of a number of listed impairments that are so severe as to preclude substantial gainful activity. Bowen, 482 U.S. at 141. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Id. If the impairment is not one that is conclusively presumed to be disabling, step four of the evaluation determines whether the impairment prevents the claimant from performing work he has performed in the past. Id. If the claimant cannot perform his past work, the fifth and final step determines whether he is able to perform other work in the national economy in light of his age, education and work experience. Id. at 142. The claimant is entitled to disability benefits only if he is not able to perform such work. Id.

**B.   The ALJ's Findings Regarding Plaintiff's Mental Residual Functional Capacity**

Plaintiff claims that the ALJ failed to properly assess her mental residual functional capacity. Specifically, plaintiff contends that the ALJ did not adequately consider California's workers' compensation standards in determining plaintiff's residual functional capacity. Plaintiff alleges that the ALJ misapplied the terms "slight" and "moderate," as used in California's workers' compensation scheme, and adopted the meaning of those terms in the Social Security context. As a result, plaintiff claims that the ALJ erred in assessing plaintiff's residual functional capacity.

On April 2, September 13, and November 8, 2001, Alfred Bloch, M.D., Ph.D., evaluated plaintiff's medical conditions arising from plaintiff's workers' compensation case. (AR at 294-344). Dr. Bloch conducted his evaluations in accordance with California's workers'

compensation system. (AR at 333-34). Dr. Bloch opined that plaintiff suffered from slight impairment in her ability to comprehend and follow instructions; very slight impairment in her ability to perform simple and repetitive tasks; slight to slight to moderate impairment in her ability to maintain a work pace appropriate to a given work load, ability to make generalizations, evaluations or decisions without immediate supervision, and ability to accept and carry out responsibility for direction, control, and planning; and slight to moderate impairment in her ability to perform complex or varied tasks, ability to relate to other people beyond giving and receiving instructions, and ability to influence people. (Id.). The California Code of Regulations defines "slight" in the context of pain as follows:  "A slight pain could be tolerated, but would cause some handicap in the performance of the activity precipitating the pain." Cal. Code Reg. § 9727.  The same regulations also define "moderate" in the context of pain as follows:  "A moderate pain could be tolerated, but would cause marked handicap in the performance of the activity precipitating the pain."  Id.

Plaintiff claims that the terms "slight" and "moderate" have significantly different meanings when used in the context of worker's compensation than in the context of social security.  Plaintiff further alleges that the vocational expert misapplied the terms used by Dr. Bloch to the social security context when she opined that plaintiff could work as a telemarketer.  Specifically, plaintiff contends that the vocational expert erred in determining that plaintiff could work as a telemarketer even though Dr. Bloch assessed slight to moderate impairment in her ability to influence, a key part of telemarketing sales.  (AR at 334).  As such, plaintiff contends

6

that the ALJ erred in adopting the vocational expert's opinion that plaintiff could perform work as a telemarketer. This arguments fails for three reasons.

First, California's guidelines for work capacity are not conclusive in a social security case. See Desrosiers v. Secretary of Health & Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); see also Macri v. Chater, 93 F.3d 540, 543-44 (9th Cir. 1996). In fact, the Ninth Circuit has recognized the dramatic differences between workers' compensation categories and those of the Social Security Act. See Desrosiers, 846 F.2d at 576 (stating that, in contrast to Social Security disability findings, California's workers' compensation categories are not based on strength, but on whether claimant sits, stands, or walks for majority of day); see also Payan v. Chater, 959 F. Supp. 1197, 1202-03 (C.D. Cal. 1996) (noting same).

Second, all of the physicians who examined plaintiff and her medical records on behalf of the Social Security Administration opined that plaintiff retained the functional capacity to work. On December 14, 2000, Kristof Siciarz, M.D., a consultative neurologist, examined plaintiff and determined that she had the ability to push, pull, lift, and carry 25 pounds occasionally and ten pounds frequently; and stand and walk for two hours out of an eight-hour workday. (AR at 328). Dr. Siciarz assessed no limitations in hearing, seeing, speaking, or handling of fine manipulation. (Id.). On May 1, 2002, John Sedgh, M.D., a consultative internist, examined plaintiff and determined that she could lift and carry 20 pounds occasionally and ten pounds frequently; stand and walk six hours in an eight-hour day with normal breaks; and sit for six hours in an eight-hour day. (AR at 346). Dr. Sedgh assessed no postural or manipulative limitations. (Id.). On

7

May 18, 2002, Norma R. Aguilar, M.D., a consultative psychiatrist, determined that plaintiff had the ability to follow and understand simple and complex instruction and interact with supervisors, co-workers, and the public. (AR at 354). Dr. Aguilar further opined that plaintiff would have mild difficulty complying with job rules, responding to changes in the normal workplace setting, and maintaining persistence and pace in a normal workplace setting. (Id.). A State Agency physician reviewed plaintiff's medical records and determined that she could occasionally lift or carry 20 pounds, frequently lift or carry ten pounds, stand or walk a total of six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and push and pull without limitation. (AR at 356). Finally, Arvin Klein, M.D., a medical expert, testified at the hearing that plaintiff retained a light residual functional capacity with no limitations other than occasional stairs, stooping, and crouching and moderate exposure to fumes, odors, gases, and extreme heat or cold. (AR at 514). Thus, all the physicians who examined plaintiff or her medical records on behalf of the Social Security Administration in connection with disability benefits opined that she was capable of employment. From this evidence, the ALJ reasonably determined that plaintiff could perform work at a light exertional level.

Even assuming that Dr. Bloch's assessment conflicted with the ALJ's residual functional capacity finding, the ALJ could properly disregard Dr. Bloch's findings. According to his report, Dr. Bloch appears to have based his findings on plaintiff's subjective complaints. (AR at 306). Dr. Bloch's report lists plaintiff's subjective complaints as anxiety, depression, sleep disorder,

nightmares, anger, irritability, social withdrawal, tearfulness, poor self esteem, decreased libido, poor concentration, and forgetfulness. (AR at 306). Under objective findings, however, Dr. Bloch simply wrote, "NA." (Id.). In his decision, the ALJ rejected plaintiff's complaints as not credible on numerous and specific grounds; namely that she was terminated from her last job for business reasons and not due to disability, her mental condition had stabilized and improved with medication, she performed activities of daily living independently, she read and practiced meditation, she stated that she was "doing well," she indicated to Dr. Bloch that she endorsed a large number of "highly deviant psychopathological times," she "presented herself in an unfavorable light," and her demeanor at the hearing was poor. (AR at 24). Thus, the ALJ was free to discount Dr. Bloch's opinion to the extent he based his opinion on plaintiff's complaints. See Andrews, 53 F.3d at 1042 ("Because McConochie's diagnoses were based on the self reporting of an unreliable person, the ALJ decided to accord them less weight. This he could legitimately do; an opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted."); see also Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989) (having discounted plaintiff's credibility, ALJ properly discredited treating physician's opinion based on plaintiff's subjective symptoms).

Finally, the vocational expert testified that she knew the difference in the definitions of the terms used by workers' compensation and social security agencies and still opined that plaintiff could work as a telemarketer. At the hearing, plaintiff's counsel specifically questioned Ms. Lassoff regarding the differences

in definitions in the workers' compensation and social security contexts:

> Q: Well, let me ask you the questions, if I may.  What is the definition of slight?
>
> A: In worker's comp terms?
>
> Q: Yes.
>
> A: What I have is – could be tolerated, causes some handicap.
>
> ....
>
> Q: Okay.  So a moderate restriction is marked?
>
> A: marked.
>
> Q: Marked handicap.
>
> A: Correct.
>
> ....
>
> ALJ: It's clear now, that [workers' compensation definitions are not similar to Social Security definitions.
>
> VE: Right.
>
> ALJ: Is that right?  So that's clear.
>
> ATTY: Absolutely.  Yes.

Thus, Ms. Lassoff testified that she understood the difference between the definitions used by the two agencies.  (AR at 529-30).

Plaintiff's counsel further questioned Ms. Lassoff regarding plaintiff's ability to work as a telemarketer given Dr. Bloch's assessment of slight to moderate impairment with respect to plaintiff's ability to influence.  (AR at 528-34).  Ms. Lassoff testified that using the workers' compensation definition of moderate, which she previously defined, plaintiff could still work as a

1 | telemarketer because the telemarketing job is highly scripted and does
2 | not involve a significant degree of persuasion.[1]  Thus, the vocational
3 | expert testified that she understood the meaning of assessments using
4 | the workers' compensation definitions and still opined that plaintiff
5 | could perform the work of a telemarketer.  As such, there is no
6 | evidence that the vocational expert misapplied the terms when
7 | rendering her decision.
8 |     Overall, the Court finds that the ALJ committed no error with
9 | respect to Dr. Bloch's findings.  The Court, therefore, rejects
10 | plaintiff's claim.

**ORDER**

After careful consideration of all documents filed in this matter, this Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the proper legal standards.  The Court, therefore, AFFIRMS the decision of the Commissioner of Social Security Administration.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: February 24, 2006

                                          /s/
                              JENNIFER T. LUM
                              UNITED STATES MAGISTRATE JUDGE

---

[1]  Ms. Lassoff testified, "Well, you have a script and – sorry– it only has an SVP of three, it's not a heavy – I mean it's all sales, obviously, you have to stay on the phone a certain amount of time.  And in my opinion, it doesn't preclude that activity."  (AR at 530).